## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>    MARIAN F. GOLEMO,<br><br>                  Debtor<br><br>JOSEPH H. BALDIGA, CHAPTER 7 TRUSTEE,<br><br>                  Plaintiff,<br><br>v.<br><br>DANUTA E. GOLEMO,<br><br>                  Defendant | Chapter 7<br>Case No. 11-43196-HJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 12-04017 |

**MEMORANDUM OF DECISION**

Before the Court is a "Motion for Determination of Domestic Support Obligation as Provided Under the Terms of the Divorce Decree" (the "Motion for Determination"), filed by Joseph H. Baldiga, the plaintiff in this adversary proceeding and Chapter 7 trustee (the "Trustee") in the underlying bankruptcy case of Marian F. Golemo (the "Debtor"). In resolving the Motion for Determination, the Court must decide whether the claim asserted against the Debtor's bankruptcy estate by the Debtor's former spouse, Danuta E. Golemo (the "Defendant" or "Ms. Golemo") constitutes a domestic support obligation (the "DSO" claim) and, if so, how that DSO claim should be valued.

1

I.    FACTS AND TRAVEL OF THE CASE

The facts material to the issues before the Court are largely undisputed. In the early 1990s, the Debtor, a Massachusetts resident, fled to North Carolina to escape civil and criminal charges against him for larceny and securities fraud in connection with a Ponzi scheme involving Polish members of the Worcester, Massachusetts community. He was apprehended in 2010 and on July 27, 2011 (the "Petition Date"), became the subject of an involuntary petition filed against him under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code").[1] The petition was uncontested and, on September 8, 2011, the Court entered an Order for Relief. The Trustee was appointed the following day.

After the Debtor absconded and long before he was captured, Ms. Golemo filed for divorce in the Worcester Division of the Massachusetts Probate and Family Court (the "Probate Court"). The Probate Court issued a final judgment of divorce against the Debtor on April 30, 1998 (the "Divorce Decree" or "Decree"). Pursuant to the Divorce Decree, the Debtor was ordered to transfer to Ms. Golemo all of his interest in 4 parcels of real estate then held as tenants by the entirety (the "Divorce Decree Transfers") – one property previously serving as the Debtor and Ms. Golemo's marital residence and 3 commercial properties from which the Golemo family businesses have been conducted (together, the "Properties"). And the Divorce Decree further provided with respect to the Debtor's interests in the Properties:

> 3.  If Marian F. Golemo shall fail to execute such deeds on or before April 15, 1998, then pursuant to Mass.R.Dom.Rel.P. 70, Marian F.

---

[1] See 11 U.S.C. § 101 et seq. All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

2

> Golemo is, as of such date, divested of his title to the above referenced properties and Danuta E. Golemo is vested with such title as well as her own;
>
> 4. Pursuant to G.L. c. 183, § 43, Danuta E. Golemo is authorized to record a certified copy of this judgment with the Registry of Deeds and that shall operate to vest title in the above referenced properties in Danuta E. Golemo as fully and completely as if the deed from Marian F. Golemo had been duly executed and recorded.

Although the Divorce Decree ordered the Debtor to effect the transfers, he never did so (having remained in hiding). But the Divorce Decree provided seemingly alternative methodologies with which to vest the Debtor's interest in the Properties in Ms. Golemo. By its Paragraph 3, the Divorce Decree appears to vest title in her by operation of law without the necessity of further recording; and in Paragraph 4, title would be vested in her upon recording of the Divorce Decree in the Worcester County Registry of Deeds.

Unfortunately, Ms. Golemo failed to record the Divorce Decree. In light of the fact that no recorded documents reflected the Divorce Decree Transfers as of the Petition Date, the Trustee commenced this adversary proceeding (the "Adversary Proceeding") under §§ 544, 551 and 363(h) seeking, *inter alia* to: (1) avoid and preserve the Divorce Decree Transfers for the benefit of the bankruptcy estate and (2) sell the Properties. In a previous memorandum of opinion, this Court held that the transfers were avoidable because the Divorce Decree was never recorded. See Baldiga v. Golemo (In re Golemo), 494 B.R. 588 (Bankr. D. Mass. 2013) ("Golemo I").[2] As a result, the Trustee and Ms. Golemo currently hold the Properties as tenants in common.

---

[2] The avoidance of the transfers was the only issue then brought to the Court in the Trustee's motion for partial summary judgment.

3

Following this Court's ruling in Golemo I, Ms. Golemo filed a claim in the amount of $1,000,000.00 against the bankruptcy estate and asserted the claim to have priority status as a domestic support obligation pursuant to § 507(a)(1)(A). The Trustee has objected to the DSO claim (the "Claim Objection"), which objection has been consolidated with this Adversary Proceeding. On April 24, 2015, the Trustee filed the Motion for Determination seeking that this Court both determine the nature of Ms. Golemo's claim (i.e., whether or not it actually is a domestic support obligation) and substantially limit the value of that claim as described below. Following a non-evidentiary hearing, this Court took the matter under advisement.

II. POSITIONS OF THE PARTIES

The Trustee argues that Ms. Golemo's claim against the bankruptcy estate is *not* a DSO claim, but rather a general unsecured claim that arose only on account of his avoidance of the Divorce Decree Transfers. According to his argument, Ms. Golemo had no DSO claim as of the Petition Date because all obligations created by the Divorce Decree (i.e. the transfer of the Properties) had been fulfilled. And while Ms. Golemo *now* has a claim against the estate as a result of the avoidance of the Divorce Decree Transfers, that claim, according to the Trustee, is only a general unsecured claim; the avoidance did not resurrect the DSO nature of any portion of her claim. Ms. Golemo disagrees and maintains that avoidance of the Divorce Decree Transfers and the claim she acquired as a result thereof revived the nature of her original claim as a domestic support obligation. She argues that stripping her underlying claim of DSO status would

4

be contrary to both Massachusetts case law and the Code's policy of protecting support claims by ex-spouses and children.

The Trustee further contends that, even were the Court to find that Ms. Golemo has a DSO claim, § 101(14A) and Massachusetts law limit the amount of the DSO portion of the claim to the value of the Debtor's interest in the Properties at the time of the divorce. And because the Properties were heavily encumbered when the Divorce Decree entered, the Trustee asserts that the Debtor's one-half interest in the Properties (and accordingly the amount of the DSO claim) was valueless as of the date of the Divorce Decree. The Trustee recognizes that Ms. Golemo *may* have a claim for amounts spent by her to retain or improve the Properties, but contends that those amounts, if proven, would be included in her general unsecured claim and would not constitute a DSO claim.

Ms. Golemo reads the Code differently and argues that her DSO claim must be valued as of the Petition Date, by virtue of § 502(h)[3], since the claim arose anew as a result of the successful avoidance of the Divorce Decree Transfers. Ms. Golemo maintains that the reference to § 502(b)[4] in § 502(h) compels the determination that her claim must be valued as of the Petition Date, *not* seventeen years prior. And she explains

---

[3] Section 502(h) provides:

> "A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."

11 U.S.C. § 502(h)

[4] Section 502(b) provides, in relevant part:

> "[A] court…shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition…"

11 U.S.C. § 502(b)

5

that the $1,000,000.00 amount claimed is comprised of her estimate of the value of one-half of the current fair market value of the Properties as well as one-half of certain obligations for which she remains liable on account of the Debtor's former interest in the Properties and were incurred in conjunction with her retention of the Properties.

III.    DISCUSSION

    A.    **Classification of the Claim**

The Bankruptcy Code defines a "domestic support obligation" as "a debt that accrues before, on, or after the date of the order for relief…that is…owed to or recoverable by…a former spouse…in the nature of alimony, maintenance, or support…without regard to whether such debt is expressly so designated…by reason of applicable provisions of…a separation agreement, divorce decree, or property settlement agreement …."  11 U.S.C. § 101(14A).

The Trustee does not dispute that, at the time of the divorce, the Probate Court intended the Divorce Decree Transfers to be in the nature of domestic support.  The Trustee argues, however, that the Debtor's domestic support obligation was fulfilled as of April 15, 1998 when title to the Properties vested in Ms. Golemo pursuant to the terms of the Divorce Decree.  Her claim *now*, he says, is a general unsecured claim that arises exclusively from the avoidance of the transfers that re-vested the Debtor's interest in the Properties in the Debtor's bankruptcy estate.

Under § 502(h) of the Code, a claim that results from the recovery of property under § 550 is allowed (or disallowed) the same as if such claim arose before the filing of

the bankruptcy case.[5] And under Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 3002(c)(3), a transferee from whom property has been recovered is granted 30 days from the date of the judgment avoiding the transfer to file a proof of claim against the estate.

Neither § 502(h) nor Bankruptcy Rule 3002, however, explicitly specifies whether that claim is necessarily a general unsecured claim or whether it retains the priority of the underlying claim against the debtor that gave rise to the avoided transfer. But both the First and Ninth Circuits have interpreted § 502(h) in the fashion requested by Ms. Golemo, ruling that a claim arising under § 502(h) retains the characteristics of the original. See Fleet National Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51 (1st Cir. 2004); Busseto Foods, Inc. v. Laizure, 548 F.3d 693 (9th Cir. 2008); County of Sacramento v. Hackney (In re Hackney), 93 BR 213 (Bankr. N.D. Cal. 1988).

In In re Bankvest, the First Circuit analyzed § 502(h) as it related to a claim's secured or unsecured status. There, the liquidating trustee sought to avoid and recover payments that had been transferred by the debtor to a secured creditor during the gap period between the filing of the debtor's involuntary petition and the order for relief. While the bankruptcy court originally held that such sums could be avoided and recovered as unauthorized postpetition transfers, the district court reversed, reasoning that nothing would be achieved by recovering payments made to a fully secured creditor since the creditor's claim against the estate would return to its secured status on account of § 502(h). Fleet National Bank v. Gray (In re Bankvest Capital Corp.), 2003 WL 1700978, at *8 (March 28, 2003) (quoting In re Adams, 212 B.R. 703, 714 (Bankr. D. Mass. 1997).

---

[5] Because § 550 applies to transfers avoided by a trustee under § 544, both § 550 and the concomitant provisions of § 502(h) apply.

7

The First Circuit affirmed, explaining that the natural import of the language used in the statute – "shall be determined, and shall be allowed" – necessarily led to the conclusion that § 502(h) reinstates or resurrects the earlier claim. In re Bankvest Capital Corp., 375 F.3d 51, 67 (1st Cir. 2004).

And in Busseto Foods, Inc. v. Laizure, the Ninth Circuit Court of Appeals echoed the First Circuit's analysis by focusing on the same language to reach its conclusion that a claim arising under § 502(h) takes on the characteristics of the original claim. There, the debtor admitted to embezzling from his employer and agreed to pay the funds back in installments. The final payment was made during the preference period, however, and the Chapter 7 trustee demanded that the employer return the money. The employer then filed a nondischargeability action against the debtor with respect to the funds the employer had to return to the trustee. At the debtor's request, the bankruptcy court dismissed the action, reasoning that: (1) the debtor owed no outstanding debt to the employer as of the petition date since the employer had been fully repaid and had not yet returned any money to the estate and (2) § 502(h) did not revive individual liability that could be imposed on a debtor. The Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP") affirmed, holding that § 502(h) allowed the employer to bring a claim against the estate, but not against the debtor. On appeal, however, the Ninth Circuit reversed, holding that the BAP's reading of § 502(h) was too narrow. The court stated that, "[t]here would be no reason to require a Section 502(h) determination if it were subsumed by allowability, so the plain language of Section 502 demonstrates that the determination is an independent inquiry. Second, the statute's use of the word "and" shows Congress'

8

intent to reinstate both determined *and* allowed claims." 548 F.3d 696, 697 (9th Cir. 2008).

Finally, the bankruptcy court in In re Hackney also wrestled with whether the language of § 502(h) provided the holder of an avoided claim with the same type of claim that existed pre-avoidance and ultimately concluded that the underlying nature of the claim was retained. There, the debtor had been convicted of welfare fraud and was required to make restitution payments to the County of Sacramento as a condition of her probation. The Chapter 7 trustee successfully avoided a preferential payment, and, similar to the Trustee here, the debtor argued that the only remaining claim that could be asserted was a new general unsecured claim against the estate. The court disagreed, however, and reasoned that reinstating a nondischargeable claim against an individual debtor, upon recovery of the preferential payment thereof, was fully consistent with the congressional objectives embedded in discharge exceptions. 93 BR 213, 218 (Bankr. N.D. Cal. 1998).

Applying the above analysis to the instant case, this Court holds that Ms. Golemo's § 502(h) claim constitutes a DSO claim entitled to priority under § 507(a)(1). Because the Debtor's interest in the Properties were transferred to Ms. Golemo on account of a domestic support obligation, Ms. Golemo's resurrected § 502(h) claim enjoys no lesser status.

    B.    **Valuation of the DSO Claim**

The Trustee argues further that, even if Ms. Golemo is entitled to a DSO claim by virtue of § 502(h), the Court, bound to the definition of a domestic support obligation in

9

§ 101(14A), must value that DSO claim using the value of the Properties as of April 15, 1998, the date of the Divorce Decree.  At that time, the encumbrances on the Properties far exceeded their value.  Accordingly, the Trustee contends, the DSO claim is valueless.

The Court, however, does not read § 101(14A) to require a valuation of the DSO claim in the manner suggested by the Trustee.  The definition of a DSO claim provides a time frame for when a DSO claim may arise ("accrues before, on, or after the date of the order for relief"), the type of relationship required between the debtor and creditor ("a former spouse"), the nature of the debt envisioned by the statute ("in the nature of alimony, maintenance, or support"), and a qualification as to how the debt came into existence ("by reason of applicable provisions of…a separation agreement, divorce decree, or property settlement agreement…").  That a debt exists because of a divorce decree does not necessarily require that the value of the debt be capped as of the date the divorce decree was entered when the Probate Court clearly envisioned otherwise. The Probate Court did not order the Debtor to make a payment of money to Ms. Golemo; instead it ordered her support to consist of the Properties. While the Trustee cites cases espousing the proposition that marital assets should be valued as of the date of the divorce decree for purposes of dividing marital property under Massachusetts law, those cases are inapposite where property was awarded *in lieu of* a judgment to pay alimony or child support**.**

This Court agrees that the language of § 502(b) and an analysis of the circumstances surrounding the creation of the Divorce Decree compel the conclusion that Ms. Golemo's DSO claim must be determined by a valuation of the Properties as of the Petition Date.  That the Properties would appreciate in value and provide greater support

to Ms. Golemo and her three minor children was more than likely foreseeable to the Probate Court, especially considering the commercial nature of three out of the four pieces of real estate. Indeed, the brevity of the Divorce Decree and the absence of any child support award (despite the fact that the Debtor fled the state leaving Ms. Golemo to care for their three minor children, one of whom is severely disabled) further strengthens the contention that the Probate Court intended the Divorce Decree Transfers to provide support to the fullest extent possible, which would logically include any appreciation in the value of the Properties.[6]

### C.    The Next Steps

In light of the foregoing, here is how the matter now stands. The transfer of the Debtor's interest in the Properties to Ms. Golemo has been avoided. The Trustee and Ms. Golemo hold title to the Properties as tenants in common. If the Trustee were successful in selling his interest in the Properties either through partition of the Properties or pursuant to § 363(h)[7] (assuming that the Trustee could meet his burden under

---

[6] Ms. Golemo has also argued that the $1,000,000.00 figure asserted in her claim reflects the loss of her benefit of the bargain in the Divorce Decree – i.e. one half of the current fair market value of the Properties plus one half of the current amounts for which she remains liable and believes are attributable to her retention of the Properties. She refers to these latter expenses as "Family Loans" and describes them as amounts borrowed from third parties in an effort to retain the Properties. She argues that § 550(e) permits her to include these amounts in her DSO claim, and estimates the outstanding balance to equal $250,000.00. In light of the rulings contained herein providing Ms. Golemo with a DSO claim in the full amount of the Debtor's interest in the Properties, these arguments have been mooted.

[7] Section 363(h) provides:

(h)    Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

11

§ 363(h)(3) – a doubtful proposition), the net proceeds of the sale would be distributed in full to Ms. Golemo as holder of the DSO claim, less any amounts owed to the Trustee under § 507(a)(1)(C).[8]  And the likelihood that the Court will allow the Trustee to liquidate the Properties for the sole purpose of then giving Ms. Golemo all of the proceeds – or for the purpose of awarding a fee to the Trustee to be paid from those proceeds on account of the illusory benefit to Ms. Golemo arising from his efforts - are not substantial.

IV.    CONCLUSION

For all of the foregoing reasons, the Court rules that if the Plaintiff is granted leave to sell the estate's interest in the Properties, the Defendant will be entitled, pursuant to §

---

(1)    partition in kind of such property among the estate and such co-owners is impracticable;

(2)    sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3)    the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4)    such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h)

[8] Section 507(a)(1)(C) provides:

If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

11 U.S.C. § 507

502(h), to a claim having priority under § 507(a)(1)(A) in an amount equal to one-half of the value of the subject Properties as of the Petition Date.

An order in conformity with this Memorandum shall issue forthwith. In that order, the Court will invite the Trustee to show cause why this adversary proceeding should not be dismissed.

Dated: October 23, 2015                                By the Court,

*[signature]*

_____
Henry J. Boroff
United States Bankruptcy Judge